O

# United States District Court
# Central District of California

DOUGLAS GALANTER,

    Plaintiff,

    v.

ACCESS FINANCE, INC. et al.,

    Defendants.

Case № 2:23-cv-09466-ODW (SSCx)

**ORDER DENYING MOTION FOR SUMMARY JUDGMENT [70]**

## I.     INTRODUCTION

Plaintiff Douglas Galanter brings this action against Defendants Access Finance, Inc. ("Access") and Los Angeles Auto Wholesalers & Recovery Services, Inc. ("LAW Recovery") relating to Defendants' repossession of Galanter's vehicle. (First Am. Compl. ("FAC"), ECF No. 20.)  LAW Recovery now moves for summary judgment.  (Mot. Summ. J. ("Motion" or "Mot."), ECF No. 70.)  The Motion is fully briefed.  (Opp'n, ECF No. 80; Reply, ECF No. 82.)  For the reasons discussed below, the Court **DENIES** Law Recovery's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. FACTUAL BACKGROUND

Galanter obtained a $20,000 loan from Access, secured by his 2015 Honda Accord ("the Vehicle"). (Def.'s Statement Uncontroverted Facts ("SUF") 2–3, ECF No. 70-1.[2]) On or about July 17, 2023, LAW Recovery received a Repossession Assignment to repossess the Vehicle. (SUF 4; Decl. Juan Martinez ISO Mot. ¶ 3, ECF No. 70-3; Def.'s Index Doc. Evid. ("DIDE") Ex. B ("Repossession Assignment"), ECF No. 70-6.) The Repossession Assignment displayed Access's company name and indicated that Galanter was delinquent on his loan in the amount of $4,804.28. (Repossession Assignment.) Access provided to LAW Recovery two possible addresses for the Vehicle, one of which is a condominium where Galanter's ex-wife resided, located at 6755 South Springpark Avenue in Los Angeles, California. (SUF 6, 35.) Galanter never resided at the condominium. (SUF 7.)

On September 5, 2023, LAW Recovery's tow truck driver, Steven McIntosh, went to the South Springpark Avenue address and repossessed the Vehicle while it was parked in a gated communal garage beneath the condominium building. (SUF 8–9, 11, 16.) The parties' version of events diverges as to how LAW Recovery entered and exited the gated garage.

### A. LAW Recovery's Version of Events

LAW Recovery contends that while McIntosh was parked in an alley near the garage gate, a "light gray foreign-made sedan" exited the garage, and McIntosh entered the garage while the gate was still open. (SUF 13–15; AMF 54, ECF No. 80-2; DIDE Ex. J ("McIntosh Dep. Tr.") 30:1–18, 56:15–58:6, ECF No. 70-14.) McIntosh then located the Vehicle, connected the Vehicle to his tow truck, and exited the garage using a garage gate remote retrieved from the Vehicle. (SUF 16–18; McIntosh Dep. Tr. 61:17–25, 62:19–63:6.)

---

[2] The Court derives the factual background, some of which is disputed, from the parties' Separate Statement of Uncontroverted Facts ("SUF"), Statements of Genuine Disputes ("SGD"), Additional Statement of Uncontroverted Facts ("AMF"), and responses thereto, in addition to the parties' clearly and specifically cited evidence. *See* C.D. Cal. L.R. 56-1 to 56-4.

B.     **Galanter's Version of Events**

Galanter disputes that McIntosh entered the garage while the gate was open. (Pl.'s Statement Genuine Disputes ("SGD") 15, ECF No. 80-2.) The garage was guarded by a motorized metal security gate that slides on steel tracks and can only be opened by residents with remote controls. (AMF 42.) The Recovery Database Network ("RDN") Log reflects that McIntosh repossessed the Vehicle on September 5, 2023, at 1:25 p.m. (AMF 69; Declaration John Sibbit, Custodian of Records ("Sibbit Decl.") Ex. 1 ("RDN Log") at RDN000001, ECF No. 80-10.) Prior to the afternoon of September 5, 2023, the gate was operating normally. (AMF 43.) On the afternoon of September 5, 2023, after being notified that the Vehicle was missing, Galanter's ex-wife, Jan Perry went to inspect the garage with two other residents. (AMF 44–45.) They observed that the metal security gate was off its tracks with the drive chain removed, the gate was not operational, and the motor housing had fingerprints imprinted in the dust and had been moved from its proper place. (AMF 45.) Nothing was missing from the garage except for the Vehicle. (AMF 46.) At the time, no resident of the condominium drove a "light gray foreign-made sedan." (AMF 55; Decl. Jan Perry ISO Opp'n ("Perry Decl.") ¶ 11, ECF No. 80-4.)

Galanter contends that another individual, Terry Sutton, was "riding along" with McIntosh on September 5, 2023, and was "ordered to break and enter the gate." (SGD 9, 14.) Galanter presents evidence that on July 18, 2023, Access issued a "Repossession Order" naming "Adjusters Steven M [and] Terry Sutton." (Decl. Alexander B. Trueblood ISO Opp'n ("Trueblood Decl.") ¶ 2, ECF No. 80-7; Pl.'s Index Doc. Evid. ("PIDE") Ex. 5 ("Repossession Order"), ECF No. 80-8.) Sutton is not a LAW Recovery employee but sometimes assists McIntosh on repossessions with "anything that [McIntosh] needed." (AMF 67–68; McIntosh Dep. Tr. 123:5–11.) In addition, the RDN Log shows four entries from September 5, 2023, posted by "Steven McIntosh" using the email address "terry.sutton120102@gmail.com." (RDN Log

at RDN000001.) Based on this evidence, Galanter contends that McIntosh and Sutton broke the garage gate to gain entry during the repossession. (SGD 14.)

### III.  PROCEDURAL BACKGROUND

On November 9, 2023, Galanter filed this suit. (Compl.) On February 27, 2024, Galanter filed the operative First Amended Complaint asserting the following causes of action: (1) violation of the Fair Debt Collection Practices Act ("FDCPA") against LAW Recovery; (2) violation of the Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") against both Defendants; and (3) conversion under California common law against both Defendants. (First Am. Compl. ("FAC") ¶¶ 18–52, ECF No. 20.) Thereafter, Galanter settled with Access and the Court granted Access's Application for Good Faith Settlement. (Order Good Faith Settlement, ECF No. 53.) LAW Recovery, the only remaining defendant in this action, now moves for summary judgment. (Mot.)

### IV.  LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" where it might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Once the moving party satisfies its initial burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Celotex*, 477 U.S. at 324. The non-moving party must show that there are "genuine factual issues that . . . may reasonably be resolved in favor of either party." *Cal. Architectural Bldg.*

*Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (emphasis omitted) (quoting *Anderson*, 477 U.S. at 250). Courts should grant summary judgment against a party who fails to make a sufficient showing on an element essential to her case when she will ultimately bear the burden of proof at trial. *Celotex*, 477 U.S. at 322–23.

In ruling on summary judgment motions, courts "view the facts and draw reasonable inferences in the light most favorable" to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007) (internal quotation marks omitted). Conclusory, speculative, or "uncorroborated and self-serving" testimony will not raise genuine issues of fact sufficient to defeat summary judgment. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

The Court may assume that material facts claimed and adequately supported are undisputed except to the extent that such material facts are (a) included in the opposing party's responsive statement of disputes *and* (b) controverted by declaration or competent written evidence. C.D. Cal. L.R. 56-4. "The Court is not obligated to look any further in the record for supporting evidence other than what is actually and specifically referenced . . . ." *Id.*

## V.    PRELIMINARY MATTERS

The Court first addresses the parties' evidentiary objections and request for judicial notice.

### A.    Evidentiary Objections

Both parties raise several evidentiary objections. (Pl.'s Evid. Objs., ECF No. 80-1; Def.'s Evid. Objs., ECF No. 82-2.)

First, any evidentiary objections not set forth in a "separate memorandum" that "identif[ies] the specific item of evidence to which objection is made, the ground for the objection, and a very brief argument with citation to authority as to why the objection is well taken" violate the Court's Scheduling and Case Management Order ("Scheduling Order") and the Court therefore disregards them. (Scheduling Order 8, ECF No. 28.)

Next, the Court **OVERRULES** all boilerplate objections based on relevance, lack of foundation, unfair prejudice, hearsay, and improper legal argument. Relevance- and foundation-based objections are duplicative of the summary judgment context. *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). As for hearsay, a court may not *grant* a summary judgment motion on the basis of hearsay evidence, but it may *deny* a summary judgment motion on the basis of hearsay evidence as long as it finds that the hearsay evidence *would be admissible* at trial. Fed. R. Civ. P. 56(e); *Fraser v Goodale*, 342 F.3d 1032, 1036–37 (9th Cir. 2003). The Court also disregards all improper arguments and statements of law. (*See* Scheduling Order 7–9.)

Further, much of the material to which the parties object is unnecessary to the resolution of the Motion and the Court need not resolve those objections. Finally, to the extent the Court relies on objected-to evidence in this order without further discussion, those objections have been thoroughly considered and are **OVERRULED**. *See Burch*, 433 F. Supp. 2d at 1122 (proceeding with only necessary evidentiary rulings).

**B.    Galanter's Request for Judicial Notice**

Galanter requests that the Court judicially notice LAW Recovery's repossession licenses reflected on the California Department of Consumer Affairs, Bureau of Security and Investigative Servies website and criminal convictions of several individuals. (Req. Judicial Notice, ECF No. 81.) The request is unopposed.

The Court may take judicial notice of public records maintained on government websites. *See Nat'l Grange of the Ord. of Patrons of Husbandry v. Cal. State Grange*, 182 F. Supp. 3d 1065, 1075 n.3 (E.D. Cal. 2016). Accordingly, the Court **GRANTS** the request as to LAW Recovery's repossession licenses reflected on the state website. As discussed below, the Court need not rely on the proffered criminal convictions to resolve the Motion and **DENIES AS MOOT** the request as to those documents.

## VI. DISCUSSION

LAW Recovery moves for summary judgment on all three claims asserted against it. (Mot. 1.) The Court addresses each argument in turn.

**A.   First Cause of Action: Violation of the FDCPA**

Galanter alleges LAW Recovery violated § 1692f(6) of the FDCPA. (FAC ¶ 20.) LAW Recovery moves for summary judgment on Galanter's FDCPA claim on the grounds that LAW Recovery (1) is not a "debt collector" defined by 15 U.S.C. § 1692a(6), and (2) had a present right to possession of the Vehicle. (Mot. 3–11.)

*1.   Debt Collector under the FDCPA*

First, LAW Recovery argues that, as a repossession company, it is not a "debt collector" subject to liability under the FDCPA. (Mot. 4–5.)

To be held liable under the FDCPA, "a defendant must—as a threshold requirement—fall within the Act's definition of 'debt collector.'" *Oei v. N. Star Cap. Acquisitions, LLC*, 486 F. Supp. 2d 1089, 1097 (C.D. Cal. 2006). The FDCPA defines the term "debt collector" in relevant part as:

> [A]ny person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. . . . For purposes of section 1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.

15 U.S.C. § 1692a(6).

The general definition of "debt collector" under § 1692a(6) "does not include repossession companies." *Pflueger v. Auto Fin. Grp., Inc.*, No. 2:97-cv-09499-CAS (CTx), 1999 WL 33740813, at *3 (C.D. Cal. Apr. 26, 1999). However, the last sentence of § 1692a(6) is informative, and provides that "*[f]or the purpose of section 1692f(6) of this title, . . .  [the] term [debt collector] also includes . . . any business the principal purpose of which is the enforcement of security interests.*" (emphases added). Section 1692f(6) proscribes debt collectors, including enforcers of security interests, from taking nonjudicial action to dispossess property under specific circumstances. *See Dowers v. Nationstar Mortg., LLC*, 852 F.3d 964, 971 (9th Cir. 2017) ("[T]he definition of debt collector under Section 1692f(6) includes a person enforcing a security interest.").

Relying on the general definition of "debt collector" under § 1692a(6), LAW Recovery contends that it is not a "debt collector" because it was hired "solely to repossess the collateral," did not have a practice of collecting debts on behalf of a lender, and did not have collection practices that could be construed as an attempt to collect a debt. (Mot. 5.) This argument might be effective if Galanter asserted a claim under another subsection of the FDCPA besides § 1692f(6). *See e.g.*, *Brooks v. Leon's Quality Adjusters, Inc.*, No. 1:15-cv-000965-JLT, 2016 WL 4539967, at *11 (E.D. Cal. Aug. 30, 2016) ("Defendants collected the *collateral* rather than the debt and are not debt collectors as applied to provisions other than Section 1692f(6)."). But here, Galanter brings a FDCPA claim against LAW Recovery only under § 1692f(6). (FAC ¶¶ 19–20.)

The parties do not dispute that LAW Recovery is a repossession company. (Mot. 5; Opp'n 9.) Repossession activities are "a form of security-interest enforcement, as the point of repossessing property that secures a debt is to collect some or all of the value of the defaulted debt." *Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 478 (2019). A repossession company therefore falls within the definition of "debt collector" for the purposes of § 1692f(6). *See Pflueger*, 1999 WL

33740813, at *4 ("It thus appears that Congress intended an enforcer of a security interest, such as a repossession company, to fall outside the ambit of the FDCPA *except for the provisions of § 1692f(6)*." (emphasis added)); *Clark v. PAR Inc.*, No. 2:15-cv-02322-MWF (FFMx), 2015 WL 13781846, at *3 (C.D. Cal. July 22, 2015) (finding defendant, a repossession forwarder, is a debt collector for purposes of § 1692f(6)). Accordingly, as LAW Recovery is a repossession company, it comes under the FDCPA's limited purpose definition of "debt collector" under § 1692f(6). Summary judgment is therefore denied as to this basis.

### 2. *Violation of 15 U.S.C. § 1692f(6)*

Next, LAW Recovery contends that it did not violate § 1692f(6) because it had a present right to possession of the Vehicle and repossessed the Vehicle lawfully under California law. (Mot. 6–12.)

Under § 1692f(6), enforcers of security interests are prohibited from "[t]aking or threatening to take any nonjudicial action to effect dispossession . . . of property if (a) there is no present right to possession of the property claimed as collateral through an enforceable interest." Courts look to state law regarding security interests to determine whether a secured party had a present right to possess the collateral. *Rivin v. Patrick K. Willis Co., Inc.*, No. 2:20-cv-07431-RGK (KSx), 2020 WL 8365251, at *4 (C.D. Cal. Dec. 4, 2020). Pursuant to California Commercial Code section 9609(b)(2), a secured party may take possession of a collateral "[w]ithout judicial process, if it proceeds without breach of the peace." "[A] breach of the peace can extinguish a present right to possession." *Rivin*, 2020 WL 8365251, at *4.

California statutes do not define "breach of the peace" and left that up for interpretation by state courts. *See* Cal. Com. Code § 9609 cmt. 3 ("[T]his section does not define or explain the conduct that will constitute a breach of the peace, leaving that matter for continuing development by the courts.") Under California Business and Professions Code section 7508.2, repossession companies are prohibited from "[u]nlawfully entering any private building or secured area without the consent of the

owner, or of the person in legal possession thereof, at the time of repossession." California courts have also interpreted breach of the peace to occur where "force or threats of force are necessary to secure possession of the collateral without judicial intervention." *Hartford Fin. Corp. v. Burns*, 96 Cal. App. 3d 591, 600 (1979); *see also Henderson v. Sec. Nat'l Bank*, 72 Cal. App. 3d 764, 770 (1977) ("[I]f the mortgagee . . . cannot get possession without committing a breach of the peace, he must stay his hand, . . . for the preservation of the public peace is of more importance to society than the right of the owner of a chattel to get possession of it.").

LAW Recovery contends that a breach of the peace requires "incidents that tend to provoke violence." (Mot. 7.) But public peace can be disturbed if "acts are likely to produce violence or . . . cause consternation and alarm in the community." *People v. Green*, 234 Cal. App. 2d Supp. 871, 873 (1965). "It is not necessary that any act have in itself any element of violence in order to constitute a breach of the peace." *Id.* Furthermore, LAW Recovery relies on inapposite cases that do not involve, as here, a repossession company allegedly breaking and entering a secured gate. *See, e.g.*, *Williams v. Ford Motor Credit Co.*, 674 F.2d 717, 719 (8th Cir. 1982) (involving repossession of a vehicle "parked in an unenclosed driveway"); *Brooks*, 2016 WL 4539967, at *13 (involving repossession of a vehicle where the defendant "was not required to open a gate, or move any physical barrier to enter the parking lot where [the p]laintiff's vehicle was located."). In fact, the court in *Brooks* specifically noted that *Henderson* determined the "unlawful entry by breaking the lock on the garage door where the car was stored constituted a conversion and, therefore, there was a breach of the peace." 2016 WL 4539967, at *13.

LAW Recovery also argues that it did not breach the peace by violating California Business and Professions Code section 7508.2(d) because McIntosh entered the garage while the gate was open and Galanter did not own the garage or reside at the South Springpark Avenue address. (Mot. 11.) To the extent LAW Recovery argues that Galanter's lack of ownership defeats this claim, this argument is

unavailing. LAW Recovery cites to the elements of a trespass claim to support this argument. (*Id.*) But Business and Professions Code section 7508.2 does not specify that the private building or secured area must be owned by the plaintiff. Instead, it generally prohibits the unlawful entry onto "any private building or secured area without the consent of the owner, or of the person in legal possession thereof, at the time of repossession." Cal. Bus. & Prof. Code § 7508.2(d). Here, LAW Recovery argues Galanter never resided at the South Springpark Avenue address. (Mot. 11.) But LAW Recovery does not present any evidence to show that McIntosh had the condominium building owner's consent to access the gated garage on the day of the repossession.

As described above, a breach of the peace may occur if "force or threats of force are necessary." *Hartford*, 96 Cal. App. 3d at 600. Courts in this district have found entry onto a gated or secured property without permission sufficient to create an issue as to whether defendants breached the peace. *See, e.g.*, *Rivin*, 2020 WL 8365251, at *4 (finding the plaintiff sufficiently pleaded a claim under § 1692f(6) by alleging defendants breached the peace when they entered his property, secured by a locked gate and fence, without permission); *Clark*, 2015 WL 13781846, at *5–6 (same).

Here, there is a genuine dispute of material fact as to whether LAW Recovery breached the peace when it entered the gated garage. It is undisputed that the Vehicle was parked in a gated garage secured by a mechanized metal gate. (AMF 42.) Both sides present contradicting testimony to support their version of events as to how McIntosh entered and exited the gated garage. Viewing the disputed facts in Galanter's favor, as is necessary on a motion for summary judgment, the gate was operating normally prior to September 5, 2023—the day McIntosh repossessed the Vehicle—and residents discovered that the gate was broken that same afternoon. (AMF 43, 45.) The only thing missing from the garage was the Vehicle. (AMF 46.) Furthermore, Galanter offers evidence showing that LAW Recovery contradicts its

own version of events by stating in its interrogatory responses that "a male standing outside granted [McIntosh] access to the garage." (AMF 52.) Accordingly, without making credibility determinations, the Court finds Galanter presents more than a mere scintilla of contradictory evidence to raise a genuine dispute of material fact that McIntosh broke the garage gate. LAW Recovery is therefore not entitled to summary judgment on this basis.

### 3. Conclusion

Based on the foregoing, the Court **DENIES** the Motion as to the first cause of action for violation of the FDCPA.

## B. Second Cause of Action: Violation of the Rosenthal Act

LAW Recovery moves for summary judgment on Galanter's Rosenthal Act claim on the grounds that LAW Recovery (1) is not a "debt collector" as defined under the Rosenthal Act and (2) did not harm the Vehicle or commit a crime. (Mot. 12–13.)

### 1. Debt Collector under the Rosenthal Act

LAW Recovery asserts that the Rosenthal Act's definition of "debt collectors" does not include security enforcers such as repossession companies, so it cannot be liable for violation of the Rosenthal Act. (Mot. 12.)

The Rosenthal Act is California's adopted version of the FDCPA. *Warner v. Midland Credit Mgmt., Inc.*, 540 F. Supp. 3d 946, 968 (C.D. Cal. 2021). The Rosenthal Act's definition of a "debt collector," however, is "broader and 'more inclusive'" than the FDCPA's. *Robinson v. Managed Accounts. Receivables Corporation,* 654 F. Supp. 2d 1051, 1060 n.8 (C.D. Cal. 2009). It includes "any person who, in the ordinary course of business, regularly, on behalf of that person or others, engages in debt collection." Cal. Civ. Code § 1788.2(c). "Debt collection" is defined as "any act or practice in connection with the collection of covered debts." *Id.* § 1788.2(b). "Debt" means "money, property, or their equivalent that is due or owing or alleged to be due or owing from a natural person to another person." *Id.* § 1788.2(d).

1 LAW Recovery argues that it is a repossession company directed to collect collateral and is therefore a security enforcer, not a "debt collector" under the Rosenthal Act. (Mot. 12.) But LAW Recovery provides no legal authority to support this proposition. Notably, the Rosenthal Act incorporates provisions of the FDCPA, including § 1692f(6). *See* Cal. Civ. Code § 1788.17 ("[E]very debt collector collecting or attempting to collect a consumer debt *shall comply with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code.*" (emphasis added)). As the FDCPA specifically provides a cause of action under § 1692f(6) against security interest enforcers and the Rosenthal Act does not exclude this provision, LAW Recovery's unsupported argument is not persuasive.

To determine whether a repossessor like LAW Recovery is a debt collector under the Rosenthal Act, courts consider "whether it regularly engages in debt collection and whether its practices are connected with the collection of consumer debts." *Shannon v. Windsor Equity Grp., Inc.*, No. 12-cv-1124-W (JMA), 2014 WL 977899, at *10 (S.D. Cal. Mar. 12, 2014) (cleaned up) (denying repossession company's motion for summary judgment because its "skip-tracing, remarketing, and repossession services, or some combination of the three can all serve as a basis to find that it is a debt collector"); *Maynard v. U.S. Auto. Assoc. Fed. Sav. Bank*, No. 21-cv-04519-JSW, 2022 WL 20611263, at *3 (N.D. Cal. Apr. 27, 2022) (refusing to dismiss plaintiff's Rosenthal Act claim because plaintiff alleged defendants "effectuate[d] repossession services in connection with an allegedly delinquent consumer loan").

Here, it is undisputed that LAW Recovery is a repossession company hired by Access to repossess the Vehicle, a collateral that secured Galanter's loan. (Mot. 5; Opp'n 10.) Galanter presents evidence that LAW Recovery advertises itself as a company that provides "recovery and repossession services to financial intuitions" and "offer[s] full skip trace services to locate . . . collateral and recover it safely." (Trueblood Decl. ¶ 10; PIDE Ex. 16 ("LAW Recovery Website Screenshot"), ECF No. 80-18.) Other than the broad and unsupported assertion that repossession

companies are not "debt collectors," LAW Recovery provides no evidence to refute that it regularly engages in debt collection for others in its ordinary course of business. Accordingly, LAW Recovery fails to show that there is no genuine dispute of material fact as to whether it engages in debt collection for others in its regular and ordinary course of business. Summary judgment is therefore denied on this basis.

*2.  Violation of the Rosenthal Act*

LAW Recovery next argues that Galanter fails to present evidence that it used criminal means to harm the Vehicle or the garage gate. (Mot. 12–13.)

Galanter asserts a claim under section 1788.10(a) of the Rosenthal Act. (FAC ¶ 28.) Section 1788.10(a) prohibits a debt collector from collecting a covered debt by "[t]he use, or threat of use, of physical force . . . to cause harm to . . . the property of any person." As discussed above, there is a material dispute of fact as to whether McIntosh damaged the garage gate when he repossessed the Vehicle. Accordingly, there is a triable issue of fact as to whether McIntosh entered the garage by force such that LAW Recovery is not entitled to summary judgment on this basis.

*3.  Conclusion*

Based on the foregoing, the Court **DENIES** the Motion as to the second cause of action for violation of the Rosenthal Act.

**C.    Third Cause of Action: Conversion**

Lastly, LAW Recovery moves for summary judgment on Galanter's conversion claim on the basis that Galanter did not have a right to possession of the Vehicle after he defaulted on the loan. (Mot. 13.)

"Conversion is the wrongful exercise of dominion over the property of another." *Lee v. Hanley*, 61 Cal. 4th 1225, 1240 (2015). To succeed on a claim for conversion, a plaintiff must prove "(1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Id.*

Galanter does not claim to have a present right to possess the Vehicle after he defaulted on the loan. (*See generally* Opp'n.) Instead, he argues that LAW Recovery, who otherwise had a right to possess the Vehicle, lost its right when it breached the peace by breaking and entering the gated garage. (*Id.* at 20–21.) "[W]here one is otherwise entitled to take possession of property, its repossession by [unlawful entry, i.e., the breaking and entering of a gated garage] constitutes a conversion." *Henderson*, 72 Cal. App. 3d at 770. As discussed above, viewing the disputed facts in Galanter's favor, a reasonable jury could find that McIntosh entered and/or exited the garage by force, extinguishing LAW Recovery's right to possess the Vehicle. Accordingly, LAW Recovery is not entitled to summary judgment on these grounds and the Court **DENIES** the Motion as to the third cause of action for conversion.

## VII.   CONCLUSION

For the reasons discussed above, the Court **DENIES** LAW Recovery's Motion for Summary Judgment. (ECF No. 70).

**IT IS SO ORDERED.**

July 30, 2025

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**